FILED

August 11, 2017

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:35 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Maury Endsley | ) Docket No. 2016-05-0743 |
| | ) |
| v. | ) State File No. 76993-2014 |
| | ) |
| Benchmark Contractors, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Dale Tipps, Judge | ) |

---

### Affirmed and Remanded – Filed August 11, 2017

---

This interlocutory appeal involves a machine operator who fell at work and reported pain and symptoms in his lower back. His claim was accepted as compensable, but the employer subsequently declined to authorize surgical treatment based on an opinion of the authorized treating physician that the surgery was not necessary. Following an expedited hearing, the trial court ordered the employer to authorize additional medical care, including surgery, concluding that the opinion of the authorized treating physician was outweighed by the opinion of a physician who provided a second opinion. The employer appealed. We affirm the trial court's decision and remand the case for any further proceedings that may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Stephen Morton, Nashville, Tennessee, for the employer-appellant, Benchmark Contractors, LLC

Timothy Lee, Nashville, Tennessee, for the employee-appellee, Maury Endsley

### Factual and Procedural Background

Maury Endsley ("Employee"), a forty-nine-year-old resident of Bedford County, Tennessee, worked for Benchmark Contractors, LLC ("Employer"), as a machine operator. On September 24, 2014, he was exiting the cab of a truck when his foot caught

and he fell backwards approximately eight to ten feet, suffering pain and other symptoms in his low back and left leg. His claim was accepted as compensable and he received authorized medical treatment from Dr. John Klekamp, who performed a discectomy at the L4-5 level.

Following surgery, Employee reported ongoing pain and symptoms. On May 5, 2015, Dr. Klekamp discussed with Employee the possibility of a spinal fusion, but concluded Employee was a poor candidate for such a procedure due primarily to his on-going status as a cigarette smoker. Dr. Klekamp estimated a less than fifty percent chance the surgery would improve his condition and referred Employee for pain management, which was authorized with Dr. Eric Young. However, when Dr. Klekamp was deposed on April 28, 2016, he testified that fusion surgery was a "viable option" and that Employee "needs to decide whether or not he wants to proceed." He then clarified that "[w]hat [Employee] has is not life threatening, so at no point . . . will I say that he has to have this surgery. I think it is a viable option for his treatment going forward." When Dr. Klekamp was asked to comment on what caused the need for surgery, he responded, "it is discogenic pain that occurred after the fall at work from the injury to the disk." When asked about the recommendations of Dr. James Fish, a physician who provided a second opinion on the issue of additional medical treatment, Dr. Klekamp responded that he would defer to Dr. Fish with respect to medical decisions concerning additional treatment options, including surgery, and he agreed that Dr. Young's referral to Dr. Fish for consideration of surgery was an appropriate treatment plan. Finally, in response to a question about the cause of the need for surgery, Dr. Klekamp agreed that the fall at work was "more than a 50 percent contributor to the need for the fusion surgery."

When Dr. Klekamp referred Employee for pain management treatment, Employee requested a second opinion, which Dr. Klekamp endorsed. Employer voluntarily provided a panel of physicians for the second opinion, from which Employee selected Dr. Fish. Following receipt of an MRI report dated February 9, 2017, Dr. Fish diagnosed a recurrent disc herniation at L4-5 and recommended a spinal fusion at that level. In his February 15, 2017 report, Dr. Fish stated, "[w]ithin a reasonable degree of medical certainty, the surgery proposed above is a direct result of the September 2014 work-related injury."

Thereafter, on May 16, 2017, Dr. Klekamp signed an affidavit in which he opined that Employee's most recent MRI did not support a finding of a recurrent disc herniation and that the proposed fusion surgery was not necessary. As a result, Employer declined to authorize this treatment. Employee filed a request for an expedited hearing, seeking an order requiring Employer to authorize further medical care as recommended by Dr. Fish. Following the expedited hearing, the trial court concluded that Dr. Klekamp was no longer an authorized treating physician, that his opinions were not entitled to a presumption of correctness, and that the opinions expressed by Dr. Fish outweighed those

2

of Dr. Klekamp. As a result, the trial court ordered Employer to authorize additional medical care, including surgery, and designated Dr. Fish as the authorized treating physician going forward. Employer has appealed.

## Standard of Review

The standard of review we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2016).

## Analysis

Employer raises five issues on appeal: (1) whether the trial court erred in not applying a presumption of correctness to the opinions of Dr. Klekamp; (2) whether the evidence supported the trial court's determination that any presumption of correctness which may be afforded to Dr. Klekamp's opinions was rebutted by Employee's evidence; (3) whether the trial court erred in ordering additional medical care; (4) whether the trial court erred in designating Dr. Fish as the authorized physician moving forward; and (5) whether the trial court failed to properly consider the affidavit of Dr. Klekamp in addition to his records and deposition testimony.

### Presumptions in Favor of Opinions of Authorized Treating Physicians

The Tennessee Workers' Compensation Act contains several provisions that favor certain opinions of a treating physician selected from a panel in accordance with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2016). For example, in section 50-6-102(14)(E), "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . ., shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Additionally, section 50-6-204(a)(3)(H) states that "[a]ny treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) *or by referral, if applicable*, shall be presumed to be medically necessary for treatment of the injured employee." (Emphasis added.) Also relevant is section 50-6-204(a)(3)(E), which states that in circumstances where a treating physician makes a referral to a specialist, the specialist physician to whom the employee was referred "shall become the treating physician until the treatment by the specialist physician . . . concludes and the employee has been referred back to the treating physician selected by the employee from the initial panel."

In considering the plain and ordinary meaning of these statutes, we note that subsection 204(a)(3)(H) applies the presumption of correctness to "*a* physician . . . selected pursuant to this subdivision (a)(3)" (emphasis added), not only to the current

treating physician as implied by the trial court. Thus, we agree with Employer that Dr. Klekamp remained an authorized treating physician even after the referral to pain management and, to the extent Dr. Klekamp expressed opinions as described in subsections 102(14)(E) and/or 204(a)(3)(H), such opinions would be entitled to a presumption of correctness.

However, that statutory analysis does not end the inquiry on this issue. Three other factors are relevant. First, Dr. Klekamp did not *recommend* treatment as contemplated in subsubsection 204(a)(3)(H), but offered an opinion that treatment recommended by another physician was not necessary. The statute provides that treatment recommended by an authorized doctor is presumed to be medically necessary, but makes no mention of whether an authorized physician's opinion about the medical necessity of treatment recommended by *another* doctor is entitled to that same presumption. Thus, by the express terms of this subsection, an opinion of one physician concerning treatment recommended by another physician does not qualify for the presumption described in subsection 204(a)(3)(H).

Second, Dr. Klekamp's opinion did not address whether the recommended treatment was "made *reasonably* necessary *by accident*," *see* Tennessee Code Annotated section 50-6-204(a)(1)(A) (emphasis added), but simply offered an opinion that it was not "necessary." In his deposition testimony, he clarified his opinion on this issue by explaining that Employee's condition was "not life threatening" and that "at no point . . . will I say that he has to have this surgery." Such testimony indicates that Dr. Klekamp's interpretation of the word "necessary" is not consistent with the meaning of "reasonably necessary" as used in Tennessee's workers' compensation laws. The question is not whether the recommended treatment is necessary to save the patient's life, but whether the treatment is "reasonably necessary" to treat the work-related injury. When considering Dr. Klekamp's deposition testimony as a whole, we conclude that Dr. Klekamp opined the fusion surgery was a "viable option" and was more than fifty percent related to the work accident. It was his belief that Employee was not a good candidate for the surgery due to his smoking history, but he did not foreclose the possibility that another physician may agree to proceed with the surgery.

Third, Dr. Klekamp referred Employee to a pain management physician "to transition his care . . . as I have not much more to offer him regarding future treatment options." That physician, Dr. Young, then referred Employee to Dr. Fish, who Employee had already selected from Employer's panel for a second opinion examination. In addition, in a July 16, 2015 report, Dr. Klekamp expressed his willingness to "provide an approval" for a second opinion examination. Finally, in his deposition, Dr. Klekamp expressly deferred to the opinions of Dr. Fish with respect to further options for Employee's medical care. Thus, there is ample evidence in the record that Dr. Klekamp concluded he had no other treatment to offer Employee, that Dr. Fish was an authorized referral from Dr. Young, that Employer accepted that referral, and that Dr. Klekamp

4

relinquished possible surgical intervention to Dr. Fish's judgment. Under these circumstances, we conclude that the trial court did not err in refusing to apply a presumption of correctness to Dr. Klekamp's opinion concerning the medical necessity of treatment recommended by Dr. Fish. While the trial court's conclusion that Dr. Klekamp was no longer a panel-selected physician whose causation opinion was entitled to a presumption of correctness was error, it was harmless under these circumstances.

*Weighing of Expert Opinions*

Given our conclusions as stated above, it is unnecessary to address Employer's assertion that the trial court erred in concluding "Dr. Klekamp's presumption of correctness was successfully rebutted." Instead, we combine and restate Employer's second and third issues as whether the trial court erred in its assessment of the weight of the expert proof and in determining that Dr. Fish's opinions outweighed those of Dr. Klekamp. It is well-settled that a trial judge has the discretion to determine which opinion to accept when presented with conflicting expert opinions. *See, e.g.*, *Bass v. The Home Depot*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). As outlined above, the proof offered by Employer from Dr. Klekamp, including his medical records, his deposition testimony, and his affidavit, is equivocal on the issue of future medical treatment options for Employee. There is no question that Dr. Klekamp opined in both his deposition and his affidavit that the fusion surgery was not "necessary." However, he never expressed any opinion as to whether the fusion surgery was "made reasonably necessary by accident" or was "medically necessary" to treat Employee's work-related injuries. Instead, his deposition testimony suggested that he associated the word "necessary" with "life-saving," which is not consistent with statutory language or applicable precedent defining the term "reasonably necessary." Finally, in his deposition, Dr. Klekamp deferred to Dr. Fish with respect to further treatment options, including surgery.

On the other hand, the record is clear that Dr. Fish recommended the fusion surgery and stated it was "a direct result of the September 2014 work-related injury." His opinions are not equivocal but are clear and direct. Under these circumstances, we believe the evidence preponderates in favor of the trial court's decision to credit the opinions of Dr. Fish over those of Dr. Klekamp to the extent those opinions conflict.

*Designation of Authorized Treating Physician*

Furthermore, we disagree with Employer's assertion that the trial court unilaterally appointed Dr. Fish as the authorized treating physician going forward. As explained previously, the record indicates Employee was referred by the original treating physician, Dr. Klekamp, for pain management, at which time he came under the authorized care of Dr. Young. Thereafter, Dr. Young referred Employee to Dr. Fish in his February 16,

2016 report. Thus, pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A) & (E), Dr. Fish became an authorized treating physician by referral.

In addition, although Employee selected Dr. Fish from a panel of physicians provided by Employer for the purpose of a second opinion examination, this selection as a second opinion physician pursuant to section 204(a)(3)(C) does not negate the later direct referral of Employee from Dr. Young to Dr. Fish for treatment. Finally, Dr. Klekamp expressed the opinion that he has nothing else to offer Employee in terms of additional treatment and would defer to Dr. Fish with respect to further treatment. Under these circumstances, we conclude it was not error for the trial court to acknowledge Dr. Fish's status as an authorized treating physician and order Employer to provide additional medical treatment as recommended by Dr. Fish.

*Trial Court's Consideration of Medical Evidence*

Finally, we find no merit in Employer's argument that the trial court "fail[ed] to consider all evidence that was properly admitted into evidence." In support of its assertion, Employer argued that footnote 2 in the trial court's order evidenced the trial court's failure to properly consider Dr. Klekamp's affidavit. We disagree. In that footnote, the trial court concluded that "[n]o evidence was presented to explain Dr. Klekamp's opinion that there is no recurrent disc herniation or whether he felt that the disc protrusion was related to the work accident." In reviewing Dr. Klekamp's affidavit, we cannot disagree with the trial court's characterization of the evidence. Although Dr. Klekamp stated in his affidavit that he did not believe the spinal fusion surgery was "necessary," he did not further explain or support this opinion. The only explanation for this opinion was offered in his deposition, where he linked the term "necessary" to "life-saving." Moreover, while Dr. Klekamp stated in his affidavit that he did not believe Employee had a recurrent disc herniation at L4-5, he did not offer any explanation of the February 9, 2017 MRI report showing "central disc protrusion at L4-L5, mildly compressing the L5 nerve root origins bilaterally." Under the circumstances, we cannot conclude that the trial court failed to consider Dr. Klekamp's affidavit and properly weigh it against other evidence in the record.

**Conclusion**

For the foregoing reasons, we conclude the evidence does not preponderate against the trial court's determination. We therefore affirm the trial court's order and remand the case for any further proceedings that may be necessary.



**FILED**

**August 11, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:35 P.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Maury Endsley | ) | Docket No.    2016-05-0743 |
| | ) | |
| v. | ) | State File No.  76993-2014 |
| | ) | |
| Benchmark Contractors, LLC, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of August, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Timothy Lee | | | | | X | tim@timleelawfirm.com |
| Stephen Morton | | | | | X | stephen.morton@mgclaw.com |
| Dale Tipps, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov